*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

C-SPINE ORTHOPEDICS, PLLC,

        Plaintiff-Appellant,

v

AUTO CLUB GROUP INSURANCE CO.,

        Defendant-Appellee.

UNPUBLISHED
December 16, 2025
2:11 PM

No. 362549
Macomb Circuit Court
LC No. 2020-001709-NF

ON REMAND

Before: O'BRIEN, P.J., and LETICA and REDFORD, JJ.

PER CURIAM.

As the original panel[1] explained, the material facts of, and issues presented by, this case are virtually identical to those in *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 344 Mich App 626, 629; 2 NW3d 71 (2022), aff'd on other grounds ___ Mich ___ (2025) (*C-Spine I*). It was for that reason that the original panel concluded that *C-Spine I* controlled the outcome of this appeal. See *C-Spine Orthopedics, PLLC v Auto Club Group Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued August 17, 2023 (Docket No. 362549) (*Auto Club*), p 1. *C-Spine I* was appealed, however, and our Supreme Court addressed the same issues as *C-Spine I* and affirmed on alternate grounds. C-*Spine Orthopedics, PLLC v Progressive Michigan Ins Co*, ___ Mich ___; ___ NW3d ___(2025) (Docket Nos 165537, 165538, and 165964) (*C-Spine II*); slip op at 38. Our Supreme Court then remanded this case back to this Court for reconsideration in light of *C-Spine II*. *C-Spine Orthopedics, PLLC v Auto Club Group Ins Co*, ___ Mich ___; 25 NW3d 336 (2025). Because our Supreme Court in *C-Spine II* ruled only that *C-Spine I* incorrectly interpreted the impact of certain facts, there is little that this Court needs to do—the outcome of this appeal continues to be the same as the outcome of the *C-Spine* case. So, consistent with *C-Spine II*, we reverse and remand this case to the trial court for further proceedings.

---

[1] Judges CAVANAGH and MARKEY were on the original panel, but they are no longer with the Court, so Judges LETICA and REDFORD are sitting in their steads.

-1-

The original panel summarized the facts of this case as follows:

> Plaintiff, C-Spine Orthopedics, PLLC, appeals as of right the trial court's order granting the motion for summary disposition filed by defendant, Auto Club Group Insurance Company. The underlying action involves C-Spine's efforts to collect no-fault benefits from Auto Club pursuant to certain assignments executed by Adrian Glenn, who was injured in a motor vehicle accident and received medical treatment from C-Spine. Before initiating this action, C-Spine assigned its rights to Glenn's accounts receivable to a number of factoring companies pursuant to various agreements. Based on C-Spine's assigning away its interest in Glenn's accounts receivable, the trial court ruled that C-Spine was not the real-party in interest and lacked standing when it filed this action. In so ruling, the trial court noted the existence of alleged counterassignments in which the factoring companies purportedly conveyed the accounts receivable back to C-Spine, but the trial court did not address the counterassignments . . . . [*Auto Club*, unpub op at 1.]

That panel then explained how these facts paralleled the material facts from *C-Spine I*:

> (1) the injured motorist (Glenn) obtained medical treatment from C-Spine for injuries incurred in the accident; (2) Glenn assigned his rights to obtain no-fault benefits from the responsible insurer to C-Spine in separate assignments after each visit; (3) C-Spine transferred all of its rights and interest in Glenn's accounts receivable to third-party factoring companies; (4) C-Spine subsequently commenced this action against the responsible insurer (Auto Club) to recover no-fault benefits for treatment rendered to Glenn; (5) Auto Club moved for summary disposition on grounds that, in light of the assignments, C-Spine was not a real party in interest and lacked standing; (6) C-Spine produced backdated counterassignments from the factoring companies conveying back to C-Spine the right to collect Glenn's accounts receivable; and (7) the trial court granted summary disposition to Auto Club on grounds that C-Spine was not a real party in interest and lacked standing. [*Id*. at 1-2.]

Then, consistent with *C-Spine I*, the panel held that the trial court erred by concluding that C-Spine did not have standing in this case because it had "statutory standing under MCL 500.3112." *Auto Club*, unpub op at 3. And, again consistent with *C-Spine I*, the panel held that C-Spine was a real party in interest because, regardless of its assignment to third-party factoring companies, C-Spine was still authorized by MCL 500.3112 to bring the suit, even if it was for the benefit of the factoring companies. *Auto Club*, unpub op at 2-3.

In *C-Spine II*, our Supreme Court affirmed *C-Spine I*'s standing analysis, see *C-Spine II*, ___ Mich at ___; slip op at 26-27, so our conclusion as to that issue is the same as the original panel's. C-Spine has standing because it is permitted by MCL 500.3112 to bring a direct cause of action against no-fault insurers like Auto Club.

As for the real-party-in-interest issue, while *C-Spine II* affirmed *C-Spine I*, its analysis differed. *C-Spine II* concluded that, reading the plaintiff's assignments in that case, it had "fully assigned its rights to litigate [the injured motorists'] claims for PIP benefits before commencement

-2-

of litigation," so "it was not the real party in interest when it filed its complaints." *C-Spine II*, ___ Mich at ___; slip op at 31. But *C-Spine II* held that the factoring companies valid counterassignments of the injured motorists' claims back to plaintiff "restored [plaintiff] as a real party in interest." *Id.* at ___; slip op at 32. That did not end the analysis, however, because "a party may not cure a real party in interest defect through out-of-court action alone," so the Court held that the plaintiff needed to file an amended complaint "reflecting the counter-assignments or take some other action that would have allowed the trial court to consider their effect." *Id.* at 32. The Court accordingly remanded the case to the trial court for further proceedings.

The facts of this case are materially identical to those of *C-Spine II* (just like they were materially identical to the facts of *C-Spine I*). And because the facts of this case are materially identical to those of *C-Spine II*, the result of this appeal is the same as the result of that one.

C-Spine transferred all of its rights and interests in Glenn's accounts receivable to third-party factoring companies,[2] so it was not the real party in interest when it filed its complaint. But during the litigation below, C-Spine produced counterassignments in which the factoring companies purported to assign their rights and interests in Glenn's accounts receivable back to C-Spine after this litigation was commenced. If those counterassignments are valid,[3] then C-Spine is the real party in interest in this litigation. Even if valid, however, the existence of the counterassignments alone is not dispositive. As explained in *C-Spine II*, C-Spine must still file an amended complaint "reflecting the counter-assignments or take some other action that would have allowed the trial court to consider their effect." *Id.* at ___; slip op at 32. So, following *C-Spine II*'s lead, we remand this case to the trial court so that C-Spine can take appropriate action to allow the court to consider the legal effect of the purported counterassignments. Additionally,

> [o]n remand, the parties may raise matters not previously addressed by the lower courts. These include whether C-Spine can now file amended complaints pursuant to MCR 2.118 and the implications of MCL 500.3145 on the case. Our decision is also without prejudice to [Auto Club] seeking summary disposition under a different legal theory, if doing so would be appropriate. [*Id.* at ___; slip op at 32-33.]

In other words, while C-Spine may be a real party in interest by virtue of the counterassignments, it was not the real party in interest when it filed its complaint, and "[w]hether C-Spine can still cure the real party in interest defect in this case in the trial court may be addressed on remand."

---

[2] The language of the assignments at issue in *C-Spine II* is substantially similar to the assignments at issue here. That aside, the plain language of the assignments at issue here clearly demonstrates that C-Spine did not retain any interest in Glenn's accounts receivable or the right to litigate the assigned claims.

[3] Auto Club disputed the validity of these counterassignments in its motion for summary disposition, but that argument has never been litigated. C-Spine failed to address the arguments in its response to Auto Club's motion, which caused the trial court to not address the merits of Auto Club's arguments. All the court said on the matter was, "Plaintiff fails to address any of Defendant's arguments regarding the alleged counter-assignments."

*Id*. at ___; slip op at 38. The trial court may also address any other issue that Auto Club wishes to raise on remand, including but not limited to whether C-Spine's counterassignments are valid, whether any amended complaint that C-Spine files relates back to C-Spine's original complaint, and the implications of MCL 500.3145 on the case.

Accordingly, like the original panel, we reverse the trial court's order granting Auto Club's motion for summary disposition, and we remand this case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

We decline to award taxable costs under MCR 7.219.


/s/ Colleen A. O'Brien
/s/ Anica Letica
/s/ James Robert Redford

-4-